Robert A. TRAMILL, Plaintiff–Appellant/Cross–Appellee,

v.

UNITED PARCEL SERVICE, Defendant–Appellee/Cross–Appellant.

Nos. 99–6297, 99–6298.

United States Court of Appeals, Sixth Circuit.

March 12, 2001.

Before JONES, BOGGS, and SILER, Circuit Judges.

SILER, Circuit Judge.

Defendant, United Parcel Service ("UPS"), appeals the jury verdict and the judgment for plaintiff, Robert A. Tramill, in this employment action under the Americans with Disabilities Act (ADA). Tramill cross-appeals the damages. We affirm the jury verdict and remand the damages question.

## BACKGROUND

While delivering packages for his employer, UPS, Tramill suffered an injury to his left foot. After undergoing surgery, he was restricted in walking and standing. He requested from UPS an accommodation based on his disability. When UPS refused, he filed two charges of discrimination with the Equal Employment Opportunity Commission and three grievances with the labor union. He then sued UPS under the ADA, 42 U.S.C. § 12101 *et seq.*, and for retaliation based on its refusal to place Tramill in any of the part-time positions for which he applied.

In a bifurcated proceeding, the jury concluded that UPS had violated Tramill's rights under both of his causes of action. The district court then awarded Tramill back pay in the amount of $81,616.89, compensatory damages based on emotional distress in the amount of $7,500, and punitive damages in the amount of $50,000. The district court further ordered that Tramill be reinstated to his "full-time position ... as a package car driver, with [ ] reasonable accommodations...." In the event this position was not possible, UPS was required to offer him a suitable part-time position with reasonable accommodations.

## STANDARDS OF REVIEW

 The court shall review the jury verdict to determine if it is supported by substantial evidence. *See Coal Res., Inc. v. Gulf & W. Indus., Inc.*, 954 F.2d 1263, 1266 (6th Cir.1992). The issue of reinstatement and the amount of damages as determined by the district court are reviewed for an abuse of discretion. *See Hudson v. Reno*, 130 F.3d 1193, 1198 (6th Cir.1997).

## DISCUSSION

### A. The Verdict

 UPS challenges the jury's verdict on the grounds that it is not supported by substantial evidence. Tramill presented testimony that an accommodation of an automatic shift truck would have assisted him in returning to his package car driver position. Such an accommodation was recommended to Supervisor Reggie Ross, but rejected by UPS. Jerry Froelich, vice president and business representative for the union, testified that at the time of Tramill's injury, no one at the UPS facility was working with an ADA accommodation, and that UPS would not accommodate Tramill with any of Froelich's suggestions because it did not want to set a precedent. Froelich further testified that the collective bargaining agreement does not specifically state that full-time employees could not bid on part-time positions.

The clerks who held or were currently holding part-time positions similar to those sought by Tramill testified as to what their positions physically encompassed. Both Dr. Beazley, Tramill's treating physician, and Tramill testified that Tramill was capable of performing these part-time positions.

The evidence produced at trial is sufficient to sustain the jury verdict as to both the ADA claim and the retaliation claim.

### B. The Award

#### 1. Health and Welfare Benefits

 Tramill seeks to reverse the district court's decision denying an award for his out-of-pocket expenses he allegedly incurred to maintain his health and welfare benefits from March 19, 1995 to March 15, 1997. His own testimony and an unauthenticated, unsworn letter written by him to his expert witness regarding the amount

allegedly paid were introduced as evidence at trial.

■ However, a plaintiff who is successful in an employment discrimination suit may recover the value of his insurance fringe benefits regardless of whether the plaintiff has purchased substitute coverage or incurred out-of-pocket medical expenses. *See Blackwell v. Sun Elec. Corp.*, 696 F.2d 1176, 1185 (6th Cir.1983). *Blackwell* supports awarding Tramill the value of the insurance coverage he would have received from UPS, so long as Tramill can provide evidence of what this amount would have been. *See id.* at 1185–86. Tramill relies on Article 34 of the collective bargaining agreement, which was in the record before the district court, to prove the value of the insurance coverage he would have received from UPS.

The district court ruled that Tramill was entitled to comparable compensation for pension benefits that UPS would have paid, holding that the collective bargaining agreement, "constitute[d] sufficient proof as to the amount of pension contributions to which Plaintiff is entitled." The provisions in the collective bargaining agreement regarding pension benefits and health and welfare benefits are the same. Furthermore, Tramill did not allege or prove a specific amount for his pension benefits, nor did the district court calculate a specific amount. The district court simply held that UPS was required to pay directly into Tramill's pension fund, "an amount equal to the pension contributions Defendant would have contributed to the Central States Pension Fund on his behalf had he remained employed at UPS...."

The district court awarded pension benefits to Tramill based on the collective bargaining agreement. It similarly should have awarded health and welfare benefits to Tramill, on the basis of our decision in *Blackwell* and because Tramill relied on a specific portion of the collective bargaining agreement (the same one supporting his award of pension benefits) to prove the amount to which he is entitled. Therefore, we remand the issue of health and welfare benefits and order the district court to award Tramill the amount of health and welfare benefits to which he would have been entitled under the collective bargaining agreement had he remained employed at UPS (1) at full-time pay for forty hours per week from October 14, 1994 through January 25, 1995, and (2) at part-time pay for twenty hours per week from January 26, 1995 through July 31, 1998.

### 2. Calculation of Back Pay

■ The district court awarded Tramill $81,616.89 in back pay, finding that he would have worked forty hours per week at the hourly rate of either $18.87, as UPS suggests, or $17.09, as Tramill asserts, from October 14, 1994 to January 25, 1995 when he could no longer perform his duties as a full-time package car driver. It further awarded back pay at $17.09 as a part-time rate between January 26, 1995 and July 31, 1998 the date after which he failed to mitigate this portion of his compensatory damages. Because the district court reinstated him to a full-time position, Tramill states that the calculation for back pay should have been based on the appropriate full-time rate for the entire period.

The court cannot determine whether the district court abused its discretion in calculating Tramill's back pay between October 14, 1994 and January 25, 1995 as it is unclear from the judgment exactly how the district court calculated Tramill's award. Nonetheless, we conclude that the back pay should be calculated at a rate of $18.87 per hour for a forty-hour week from October 14, 1994 to January 25, 1995. In light of the fact that Tramill only applied for part-time work at UPS after January 25,

1995, the district court did not abuse its discretion in calculating the back pay at a part-time rate beginning on January 26, 1995. Therefore, the court remands this matter to the district court for clarification of its calculations, and for a recalculation of Tramill's back pay at the rate of $18.87 during the aforementioned period if it failed to do so in the initial judgment.

### 3. Compensatory Damages for Pain and Suffering

During the time in which UPS refused to accommodate Tramill, he states that he suffered great emotional distress and humiliation in dealing with credit card companies and in securing and retaining health insurance for his family. Hence, he believes that the compensatory award of $7,500 for emotional distress is insufficient.

The district court has broad discretion in determining the credibility of witnesses. *See K & T Enters., Inc. v. Zurich Ins. Co.*, 97 F.3d 171, 175–76 (6th Cir. 1996). The district court did not abuse its discretion in declining to award greater damages for emotional distress.

### 4. Mitigation

Although UPS discriminated against Tramill, he remained under a duty to mitigate his damages after the discrimination occurred. *See Rasimas v. Michigan Dep't of Mental Health,* 714 F.2d 614, 623 (6th Cir.1983). He is required to be "reasonably diligent in seeking substantially equivalent employment." *United States Equal Employ. Opportunity Comm'n v. Massey Yardley Chrysler Plymouth, Inc.,* 117 F.3d 1244, 1251 (11th Cir.1997). UPS has the burden of proving lack of diligence on Tramill's part. *See id.* at 1252.

Tramill testified that he made numerous attempts in and around Clarksville, Tennessee to obtain employment af-

ter UPS refused to accommodate him. However, he remained unemployed from March 8, 1994 to the summer of 1998 at which time he began working for a baking company. He states that all of the applications he filed during this time period show that he actively sought work after UPS discriminated against him.

The district court determined that on July 31, 1998 when he left the baking company for which he worked, Tramill ceased mitigating his damages, as he admitted on cross-examination that he had not applied for any other jobs after that time. Hence, the district court did not err in declining to award back pay after July 31, 1998.

### 5. Punitive Damages

Finding that UPS "acted with reckless indifference to [Mr. Tramill's] federally protected right," the district court awarded punitive damages in the amount of $50,000. UPS appeals, contending that no direct evidence of discrimination or discriminatory intent, nor any substantial evidence of reckless indifference or malice by UPS was admitted in this case. Tramill cross-appeals and seeks an increase in the amount of damages awarded based on UPS's refusal to offer him any type of accommodation.

A plaintiff is entitled to punitive damages "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade,* 461 U.S. 30, 56, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983). The purpose of awarding punitive damages is to punish the defendant and deter similar unlawful conduct in the future. *See City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 266–67, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981). The district court did not abuse its

discretion in awarding $50,000 in punitive damages against UPS based on its reckless indifference to Tramill's federally protected right.

### C. The Reinstatement Order

 UPS appeals the district court's decision requiring it to reinstate Tramill to a full-time package car driver with reasonable accommodations such as an automatic transmission and route assignments involving minimal walking. It notes that although reinstatement is a favored remedy within the law, "[it] is not appropriate in every case...." *Hudson v. Reno*, 130 F.3d 1193, 1202 (6th Cir.1997)(internal quotations omitted).

Under the ADA, UPS is required to provide Tramill with reasonable accommodations to enable him to perform his job. Tramill has stated that with the accommodations ordered by the district court, he will be able to perform his duties as a package car driver. Therefore, the district court did not abuse its discretion in ordering UPS to reinstate Tramill to his previous position.

### CONCLUSION

We affirm the jury verdict, the awards for pain and suffering and punitive damages, and the order of reinstatement. As to the district court's calculation of Tramill's back pay from October 14, 1994 to January 25, 1995, and the denial of reimbursement for health and welfare benefits, the judgment is remanded in accordance with this opinion. The remainder of the back pay award is affirmed.

REMANDED.

NATHANIEL R. JONES, Circuit Judge, concurring.

NATHANIEL R. JONES, Circuit Judge.

Although I concur in the majority's opinion, I write separately to point out my concern with the rationale behind calculating back pay and health and welfare benefits during the period of January 26, 1995 to July 31, 1998 as if Tramill had been working only part-time at UPS.

The district court found the date of January 25, 1995 to be significant because that was the date upon which Tramill attempted to complete his full-time route, had to quit because of pain, and told his supervisor that he could not perform the duties of a full-time package car driver. However, at that point he was trying to do his route without any reasonable accommodation, such as an automatic truck. The district court's reinstatement order suggests that UPS could have accommodated Tramill so that he could perform his full-time job.

The majority accepts this date as the point after which a part-time rate should be applied because Tramill only applied for part-time work at UPS after January 25, 1995. Faced with the understanding that UPS was not going to make accommodations to allow him to perform his original full-time job, Tramill applied for multiple part-time jobs at UPS. The fact that he sought these UPS positions should not result in reduced back-pay. An ADA plaintiff should not be penalized for attempting to seek alternative positions—or accommodations—from his employer.

I concur, however, because the only other position for which Tramill appears to have applied during this period was with Flowers Bakery. He obtained this position and worked for a few months in the summer of 1998. Since it is unclear whether this position was part-time or full-time, and considering the lack of effort put forth by Tramill to seek other employment during these years, I concur in the majori-

ty's conclusion that the district court did not abuse its discretion with respect to this issue.